FILED
2025 Feb-25  AM 10:55
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## JASPER DIVISION

| | | |
|---|---|---|
| **DARION TREMAINE KENNEMORE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.** |
| | ) | **6:20-cv-8018-MHH** |
| **UNITED STATES OF AMERICA,** | ) | **6:18-cr-404-MHH-HNJ** |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

In 2019, pursuant to a plea agreement, Darion Tremaine Kennemore pleaded guilty to two firearm charges.  He is serving a 108-month sentence of imprisonment. Pursuant to 28 U.S.C. § 2255, Mr. Kennemore seeks relief from his conviction and sentence.  (Doc. 1).[1]  Mr. Kennemore contends that his attorney in his federal criminal case was ineffective.  Mr. Kennemore also requests a reduction of his sentence based on "substantial assistance."

The United States opposes Mr. Kennemore's motion.  In addition to its opposition brief, the United States has filed an affidavit from Mr. Kennemore's

---

[1] "Doc." record cites refer to docket entries in this § 2255 case; "Crim. Doc." cites refer to docket entries in Mr. Kennemore's underlying criminal case, No. 6:18-cr-00404-MHH-HNJ-2.

criminal attorney, Mr. James Kendrick, (Doc. 8-1); a copy of a letter Mr. Kennemore appears to have written to Mr. Kendrick, (Doc. 8-2); and the transcript from Mr. Kendrick's sentencing hearing, (Doc. 8-3). After Mr. Kennemore notified the Court that he did not receive a copy of the United States' submission, (Doc. 9), the Court ordered the Clerk of Court to mail to Mr. Kennemore a copy of the United States' response and gave Mr. Kennemore time to file a reply. (Doc. 11). The Postal Service has not returned that mailing, and the Court has not received a reply from Mr. Kennemore.

This opinion resolves Mr. Kennemore's arguments for relief. The Court interprets Mr. Kennemore's arguments for relief liberally because he is proceeding without the help of an attorney in this § 2255 proceeding. *See Mederos v. United States*, 218 F.3d 1252, 1254 (11th Cir. 2000) (stating in a § 2255 proceeding that "[p]ro se filings, including those submitted [] in the present case, are entitled to liberal construction."). The Court summarizes the proceedings relevant to Mr. Kennemore's motion and then addresses his arguments for relief.

## I.

On August 29, 2018, a grand jury indicted Mr. Kennemore on three charges: theft of a firearm from a federally licensed dealer, possession of a stolen firearm, and felon in possession of a firearm. (Crim. Doc. 1). At Mr. Kennemore's initial appearance, the Court appointed CJA attorney James Kendrick to represent Mr.

Kennemore. (Crim. Sept. 19, 2018 minute entry). In his affidavit, Mr. Kendrick stated that on October 21, 2018, Mr. Kennemore "contacted [him] and requested that a 'mental health evaluation' be performed." (Doc. 8-1, p. 3). Mr. Kendrick met with Mr. Kennemore on October 23, 2018 to discuss the case, and on October 24, 2018, Mr. Kendrick filed a motion for a psychological evaluation of Mr. Kennemore. (Doc. 8-1, p. 3; Crim. Doc. 27).[2]

In the motion, Mr. Kendrick explained that Mr. Kennemore and his mother indicated that Mr. Kennemore had "apparent psychological and/or neurological issues" and suffered from several mental disorders for which he took medication. (Crim. Doc. 27, pp. 1-2). Mr. Kendrick asserted that an evaluation was necessary to determine "the ability of Mr. Kennemore to assist counsel in his defense of the criminal charges facing him." (Crim. Doc. 27, p. 2). Mr. Kendrick did not ask for an assessment of Mr. Kennemore's ability to understand the wrongfulness of his conduct at the time of the offense. (Crim. Doc. 27, p. 2). The magistrate judge

---

[2] Although Mr. Kendrick's affidavit contains communications normally subject to the attorney-client privilege, the Court may consider the affidavit to resolve Mr. Kennemore's ineffective assistance of counsel arguments. Mr. Kennemore "'waive[d] [his] attorney-client privilege when [he] inject[ed] into [] litigation an issue that requires testimony from [his] attorneys or testimony concerning the reasonableness of [his] attorney['s] conduct.'" *Johnson v. Alabama*, 256 F.3d 1156, 1178 (11th Cir. 2001) (quoting *GAB Bus. Servs., Inc. v. Syndicate 627,* 809 F.2d 755, 762 (11th Cir. 1987)). A defendant who files a § 2255 motion may dispute the scope of the waiver implicated by his filing. *Johnson*, 256 F.3d at 1179 (stating that the "precise boundaries of the waiver [of privilege] will vary from case to case, and in many instances will require careful evaluation by the district court. . . ."). Mr. Kennemore has not challenged Mr. Kendrick's affidavit, and the Court does not find that the scope of the disclosures in the affidavit exceeds the scope of the issues Mr. Kennemore raised in his § 2255 motion.

assigned to Mr. Kennemore's criminal case found reasonable cause to believe that Mr. Kennemore suffered from a mental disease or defect rendering him incompetent to stand trial, and the judge ordered a psychological evaluation pursuant to 18 U.S.C. § 4241. (Crim. Doc. 29). The magistrate judge ordered Dr. Kimberly Ackerson to evaluate Mr. Kennemore at the Hoover Municipal Jail and directed Dr. Ackerson to provide an opinion regarding the existence of a "mental disease or defect which would render him[] mentally incompetent to the extent he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." (Crim. Doc. 29, p. 2). The order does not concern the possible effect of a mental disease or defect on Mr. Kennemore's ability to understand the wrongfulness of his conduct when he committed the crimes charged in his criminal case or potential mitigating factors relating to Mr. Kennemore's mental health. (Crim. Doc. 29).

In an unsigned letter addressed to "Mr. Hardwick" that Mr. Kendrick received on October 31, 2018, Mr. Kennemore wrote that he "decided that [he did] not want a mental evaluation." (Doc. 8-2, p. 2). Mr. Kennemore offered to plead guilty to the felon-in-possession charge in exchange for dismissal of the other charges against him and a binding plea agreement for a 36-month sentence, community service, and up to 10 years of supervised release. (Doc. 8-2, p. 2). Mr. Kennemore wrote that he had letters of support from members of his community, that he was not a career

criminal, and that he had to resort to criminal conduct to provide for himself and his daughter. (Doc. 8-2, p. 2).[3]

On January 8, 2019, Dr. Kimberly Ackerson conducted a psychological evaluation of Mr. Kennemore at the Cullman County jail. (Crim. Doc. 30; Sealed Crim. Doc. 31). Dr. Ackerson noted that Mr. Kennemore suffered from narcolepsy, cataplexy, depression, and bipolar disorder and that Mr. Kennemore reported that medications for these impairments had been ineffective. (Sealed Crim. Doc. 31, p. 3). Mr. Kennemore indicated that these disorders "continue[d] to adversely affect his overall functioning" and "contributed to long-standing emotional distress and depression." (Sealed Crim. Doc. 31, p. 5). Mr. Kennemore stated that psychotropic medications provided "minimal to no relief" and "made [his] narcolepsy kick in." (Sealed Crim. Doc. 31, p. 3). Mr. Kennemore reported "continued depression secondary to [his] compromised physical health status." (Sealed Crim. Doc. 31, p. 5).

Dr. Ackerson noted that Mr. Kennemore knew his attorney's name and stated that his attorney "might assist in 'trying to get the best sentence.'" (Sealed Crim. Doc. 31, p. 4). Mr. Kennemore reported that he had met with his attorney once and was frustrated because his attorney had not "responded to his letters." (Sealed Crim.

---

[3] As with Mr. Kendrick's affidavit, Mr. Kennemore has waived his attorney-client privilege with respect to his October 2018 letter to Mr. Kendrick.

Doc. 31, pp. 4-5). Dr. Ackerson indicated that Mr. Kennemore did not express "significant concerns" regarding Mr. Kendrick, but Mr. Kennemore "expressed a desire for additional opportunity to discuss his case with counsel." (Sealed Crim. Doc. 31, p. 5).

Dr. Ackerson opined that Mr. Kennemore understood the charges against him, the potential consequences for his criminal conduct, and the trial process. (Sealed Crim. Doc. 31, pp. 4-5). Dr. Ackerson wrote that "Mr. Kennemore was psychiatrically stable to participate in the evaluation[,] and he demonstrated no emotional distress or cognitive impairments." (Sealed Crim. Doc. 31, p. 5). Dr. Ackerson found that Mr. Kennemore did not have "cognitive or immediate psychiatric issues" that precluded him from participating in his defense. (Sealed Crim. Doc. 31, p. 6). If Mr. Kennemore received a custodial sentence, Dr. Ackerson recommended that an expert in neurological disorders address Mr. Kennemore's "physical health issues" and medication management for his impairments because "medications commonly prescribed to address depression and other psychiatric conditions could be contraindicated" by his narcolepsy and cataplexy. (Sealed Crim. Doc. 31, pp. 5, 6). Dr. Ackerson did not address Mr. Kennemore's competence at

the time of the conduct with which he was charged or mitigating factors relevant to sentencing. (Sealed Crim. Doc. 31).

Mr. Kendrick reviewed Dr. Ackerson's report with Mr. Kennemore on January 21, 2019; Mr. Kennemore did not object to Dr. Ackerson's report. (Doc. 8-1, p. 3). According to Mr. Kendrick, Mr. Kennemore instructed him to "accept the negotiated plea deal." (Doc. 8-1, p. 3). Mr. Kendrick informed the Court that Mr. Kennemore intended to plead guilty. (Crim. Doc. 34). Pursuant to a plea agreement, the United States agreed to dismiss the felon in possession count, and Mr. Kennemore pleaded guilty to the remaining two firearm counts. (Crim. Doc. 38; Crim. Doc. 83; Crim. Jan. 31, 2019 minute entry).

At the plea hearing, Mr. Kennemore indicated that he did not have mental health conditions "that would affect [his] ability to understand" the Court's questions. (Crim. Doc. 83, p. 3). Mr. Kennemore stated that he did not have "complaints or concerns about the work that Mr. Kendrick [had] done for [him]." (Crim. Doc. 83, p. 10). Based on his sworn answers during his change of plea hearing and based on the executed advice of rights certification that Mr. Kennemore provided at the hearing, the Court determined that Mr. Kennemore was acting voluntarily. Pursuant to the parties' plea agreement, the Court accepted Mr. Kennemore's guilty plea as to counts one and four. (Crim. Doc. 83, pp. 12-13).

Based on an offense level of 27 and criminal history category of V, the United States Probation Office calculated a guideline imprisonment range for Mr. Kennemore of 120 to 150 months, which converted to 120 months because of the 120-month statutory maximum. (Sealed Crim. Doc. 49, p. 30).[4] Mr. Kendrick filed a sentencing memorandum and attached a letter from Mr. Kennemore's grandmother. (Crim. Doc. 46). In the sentencing memorandum, Mr. Kendrick discussed Mr. Kennemore's "chronic neurological disorders" and stated that most of Mr. Kennemore's contacts with law enforcement occurred "while he suffered with narcolepsy and cataplexy." (Crim. Doc. 46, p. 2). Mr. Kendrick described how Mr. Kennemore's narcolepsy and cataplexy affected his education and ability to work. (Crim. Doc. 46). Mr. Kendrick argued that the Court should vary downward from 120 months of imprisonment to 60 months. (Crim. Doc. 46, p. 3).[5]

The Court held a sentencing hearing on July 15, 2019. (Crim. Doc. 81; Doc. 8-3). At the hearing, Mr. Kendrick argued that the Court should depart from the 120-month guideline range pursuant to U.S.S.G. § 5H1.4 and sentence Mr. Kennemore to 60 months imprisonment based on his "extreme physical

---

[4] Mr. Kennemore's criminal history reflects a series of burglary, robbery, and breaking and entering convictions. (Sealed Crim. Doc. 49, pp. 12-21). The first-degree robbery conviction constitutes a crime of violence for purposes of USSG 2K2.1(a).

[5] Mr. Kendrick also requested 60 months of supervised release. (Crim. Doc. 46, p. 3). The statutory maximum period of supervised release under Counts 1 and 4 was three years. (Sealed Crim. Doc. 49, p. 30).

impairment." (Crim. Doc. 81, p. 4; Doc. 8-3, p. 5).[6] Mr. Kendrick explained that Mr. Kennemore's psychological problems affected Mr. Kennemore's physical health. (Crim. Doc. 81, p. 4; Doc. 8-3, p. 5). The Court acknowledged that Mr. Kennemore faced challenges with school and employment because of his narcolepsy and cataplexy. (Crim. Doc. 81, pp. 6-7; Doc. 8-3, pp. 7-8). The Court also noted that the firearm offenses were Mr. Kennemore's third conviction for stealing guns. (Crim. Doc. 81, p. 7; Doc. 8-3, p. 8). The Court considered Mr. Kennemore's mental health history and Dr. Ackerson's psychological report. (Crim. Doc. 81, p. 9; Doc. 8-3, p. 10). The Court balanced "the very real challenges that [Mr. Kennemore] face[d] . . . and the seriousness of the crime that [he] committed" and varied below the guideline range. (Crim. Doc. 81, pp. 7-8; Crim. Doc. 51, p. 3; Doc. 8-3, pp. 8-9). The Court sentenced Mr. Kennemore to 108 months imprisonment and three years of supervised release. (Crim. Doc. 81, p. 8; Doc. 8-3, p. 9).

Because Mr. Kennemore did not appeal, his conviction became final on July 30, 2019, fourteen days after the Court entered judgment against him. *Murphy v. United States*, 634 F.3d 1303, 1307 (11th Cir. 2011) ("[W]hen a defendant does not

---

[6] Under § 5H1.4, "[p]hysical condition or appearance, including physique, may be relevant in determining whether a departure is warranted, if the condition or appearance, individually or in combination with other offender characteristics, is present to an unusual degree and distinguishes the case from the typical cases covered by the guidelines. An extraordinary physical impairment may be a reason to depart downward; *e.g.*, in the case of a seriously infirm defendant, home detention may be as efficient as, and less costly than, imprisonment." U.S.S.G. § 5H1.4.

appeal his conviction or sentence, the judgment of conviction becomes final when the time for seeking that review expires."); Fed. R. App. P. 4(b)(1) (establishing a 14-day deadline for appeals by criminal defendants); (*see* Crim. Doc. 81, p. 10 (advising Mr. Kennemore of 14-day period for notice of appeal), Crim. Doc. 50). Mr. Kennemore filed his § 2255 motion on May 11, 2020, within one year of his final conviction, (Doc. 1), so his motion is timely under 28 U.S.C. § 2255(f)(1).[7]

## II.

Mr. Kennemore argues that Mr. Kendrick was ineffective because Mr. Kendrick did not "file for a mental health evaluation with a federal psychologist to determine whether [Mr. Kennemore] had diminished capacity at the time of the instant offense," and he did not address at Mr. Kennemore's sentencing hearing mitigating factors related to Mr. Kennemore's narcolepsy, cataplexy, and mental health conditions. (Doc. 1, pp. 4-5, 16-18). *Strickland v. Washington* governs claims for ineffective assistance of counsel. 466 U.S. 668, 687-88, 694 (1984). To establish ineffective assistance of counsel, a defendant must prove that his attorney's performance "was deficient and that his counsel's deficient performance prejudiced him." *Andrus v. Texas*, 590 U.S. 806, 813 (2020) (citing *Strickland*, 466 U.S. at

---

[7] The Clerk of Court docketed the motion on May 15, 2020, but Mr. Kennemore signed the motion on May 11, 2020, (Doc. 1, p. 12). Therefore, the Court deems the motion filed on May 11, 2020 by operation of the "prison mailbox" rule. *See Houston v. Lack*, 487 U.S. 266, 271-72 (1988) (holding a *pro se* prisoner's submission is deemed filed on the date it is delivered to prison authorities for mailing).

688).    To satisfy the performance prong, a defendant must establish by a preponderance of the evidence that his attorney's performance was unreasonable. *Stewart v. Sec'y, Dep't of Corr.*, 476 F.3d 1193, 1209 (11th Cir. 2007) (citation omitted).  Deficient performance is "'representation [that falls] below an objective standard of reasonableness.'"  *Hardwick v. Sec'y, Fla. Dep't of Corr.*, 803 F.3d 541, 551 (11th Cir. 2015) (citing *Strickland*, 466 U.S. at 688).  In evaluating an attorney's performance, a district court must consider the totality of the circumstances to determine whether the defendant had adequate representation.  *Stanley v. Zant*, 697 F.2d 955, 962 (11th Cir. 1983).  A criminal defendant is not entitled to the best legal representation; adequate representation satisfies the constitutional standard. *Stewart*, 476 F.3d at 1209; *Stone v. Dugger*, 837 F.2d 1477 (11th Cir. 1988).  A defendant "'must establish that no competent counsel would have taken the [challenged] action.'"  *Khan v. United States*, 928 F.3d 1264, 1272 (11th Cir. 2019) (quoting *Chandler v. United States*, 218 F.3d 1305, 1314-15 (11th Cir. 2000)). Additionally, an attorney is "not ineffective for failing to raise a nonmeritorious claim."  *Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001).

A defendant must meet a high burden to establish that his attorney's deficient performance prejudiced his case. *Van Poyck v. Fla. Dep't of Corr.*, 290 F.3d 1318, 1322 (11th Cir. 2002).  A defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

different." *Strickland*, 466 U.S. at 694.  If a defendant does not satisfy both prongs of the *Strickland* test, then a district court must deny the defendant's § 2255 motion. *Strickland*, 466 U.S. at 687.

Mr. Kennemore argues that he told Mr. Kendrick to file a motion for an evaluation concerning his mental capacity at the time of the offense because he (Mr. Kennemore) was not "in his right state of mind at the time of the [] offense," he could not "control behavior that he [knew] was wrongful" because "Bipolar disorder and narcolepsy with cataplexy combined significantly reduced [his] ability to exercise the power of reason," his conduct was impulsive, he was in a "manic depressive stage" when he committed the offense, and his mental capacity was diminished because of bipolar disorder and severe depression and anxiety that were not "being treated at the time of the offense."  (Doc. 1, pp. 4-5, 16-17).  Citing sentencing guideline § 5K2.13, Mr. Kennemore contends that "a lower sentence [was] warranted to reflect the extent to which reduced mental capacity contributed to the commission of the offense."  (Doc. 1, p. 16).  Mr. Kennemore points out that his attorney did not discuss mitigating factors at his sentencing hearing, relying instead on his sentencing memorandum that did not "include the full extent of circumstances and mitigating factors."  (Doc. 1, p. 5).[8]

---

[8] The sentencing memo does not mention U.S.S.G. § 5K2.13.  (Crim. Doc. 46).

In the Insanity Defense Reform Act of 1984, Congress "eliminated all other affirmative defenses or excuses based upon mental disease or defect" other than insanity, including a defense based on "diminished ability or failure to reflect adequately upon the consequences or nature of one's actions." *United States v. Cameron*, 907 F.2d 1051, 1061-62 (11th Cir. 1990) (emphasis omitted) (citing Insanity Defense Reform Act of 1984, Pub. L. No. 98-473, Title II, § 402(a), 98 Stat. 2057, § 20, recodified at 18 U.S.C. § 17). To prevail on a defense of mental incompetency at the time of the offense—i.e., a defense of insanity—a defendant must prove by clear and convincing evidence that "as a result of a severe mental disease of defect, [he] was unable to appreciate the nature and quality or the wrongfulness of his acts." *See* 18 U.S.C. § 17.

Mr. Kennemore does not argue that he was legally insane the time of the offense, and Mr. Kennemore's diagnoses of depression and bipolar disorder and struggles with narcolepsy and cataplexy do not equate to insanity. 18 U.S.C. § 17(a) ("Mental disease or defect does not otherwise constitute a defense."). The record does not contain facts on which Mr. Kendrick reasonably could have based an insanity defense. Mr. Kendrick stated in his affidavit that during his meetings with Mr. Kennemore, Mr. Kennemore acknowledged his role in the crimes, was aware of the details of the crimes, aided and abetted a second defendant, "understood and was aware that he was committing a crime," and understood the "ramifications associated

13

with" his criminal activity. (Doc. 8-1, p. 4). On this record, it was reasonable for Mr. Kendrick to forgo an insanity defense under 18 U.S.C. § 17. Because a diminished capacity defense was not available to Mr. Kennemore, Mr. Kendrick's failure to pursue a diminished capacity defense was reasonable. Mr. Kennemore cannot show deficient performance or prejudice from Mr. Kendrick's failure to raise a non-meritorious defense.

The record does not indicate why, in seeking a mental evaluation for Mr. Kennemore concerning his competency to assist in his defense, Mr. Kendrick did not request an assessment of mitigating factors for purposes of sentencing. In orders for mental evaluations concerning competency to assist in one's defense, magistrate judges may ask the evaluator to comment on a range of issues. The magistrate judge here would have had the discretion to entertain such a request. Given Mr. Kennemore's history of depression, anxiety, bipolar disorder, and neurological disorders, Mr. Kendrick would not have faced an ethical obstacle in making such a request; the request would be legitimate. Still, as discussed, Mr. Kennemore was not entitled to the best legal representation because adequate representation satisfies the constitutional standard. *Stewart*, 476 F.3d at 1209. Mr. Kendrick's request for a mental evaluation of Mr. Kennemore's competency to assist in his defense

produced a report that sheds light upon mitigating factors even without a formal request for an evaluation of those factors.

As a result, Mr. Kennemore cannot demonstrate prejudice based on Mr. Kendrick's failure to request an assessment of mitigating factors for purposes of sentencing. Dr. Ackerson's report is broad and comprehensive and captures probative information concerning Mr. Kennemore's history of narcolepsy, cataplexy, and mental health diagnoses. Dr. Ackerson described narcolepsy and cataplexy and the impact that these physical impairments have had on Mr. Kennemore's education, potential employment, and mental health. (Crim. Doc. 31, pp. 2, 5). Dr. Ackerson recommended that Mr. Kennemore be assessed while in BOP custody for possible medication to treat his depression and cautioned that the person conducting the assessment should be knowledgeable about narcolepsy and cataplexy because the conditions could limit Mr. Kennemore's options for prescription medication. (Crim. Doc. 31, p. 5). At the sentencing hearing, the Court noted that it had reviewed Dr. Ackerson's report to prepare for the sentencing hearing. (Crim. Doc. 81, p. 9).

Though Mr. Kendrick did not ask for an assessment of the impact of Mr. Kennemore's mental health on his criminal intent, in his sentencing memorandum, Mr. Kendrick asked the Court to vary downward based on Mr. Kennemore's struggles with education and employment because of his narcolepsy and cataplexy.

(Crim. Doc. 46). At the sentencing hearing, Mr. Kendrick argued that the Court should depart from the guideline range under U.S.S.G. § 5H1.4 based on Mr. Kennemore's extreme physical impairments. (Sealed Crim. Doc. 81, p. 4; Doc. 8-3). The Court discussed the effect Mr. Kennemore's physical and mental health struggles had on his education and his ability to maintain employment and varied Mr. Kennemore's sentence downward from the low end of 120 months to 108 months. (Doc. 81, pp. 6-8; Doc. 8-3, pp. 7-9).

The Court is not persuaded by Mr. Kennemore's related argument that Mr. Kendrick's failure to argue for a downward departure based on diminished capacity under U.S.S.G. § 5K2.13 amounts to ineffective assistance of counsel. (Doc. 1, p. 16). Section 5K2.13 states that "[a] downward departure may be warranted if (1) the defendant committed the offense while suffering from a significantly reduced mental capacity; and (2) the significantly reduced mental capacity contributed substantially to the commission of the offense." U.S.S.G. § 5K2.13. The Application Note to Section 5K2.13 states that "[s]ignificantly reduced mental capacity" means "the defendant, although convicted, has a significantly impaired ability to (A) understand the wrongfulness of the behavior comprising the offense or

to exercise the power of reason; or (B) control behavior that the defendant knows is wrongful." U.S.S.G. § 5K2.13 cmt. n. 1.

Mr. Kennemore contends that when he stole the firearms at issue in his criminal case, his conduct was impulsive because he was in a "manic depressive stage" of bipolar disorder. (Doc. 1, pp. 4-5, 16-17). The contention suggests that Mr. Kennemore was not able to control behavior that he knew was wrong, and a mental health evaluation concerning diminished capacity may have supported an argument along these lines at sentencing. But § 5K2.13 also states that a court "may not depart below the applicable guideline range if . . . (3) the defendant's criminal history indicates a need to incarcerate the defendant to protect the public." U.S.S.G. § 5K2.13. As the Court noted at Mr. Kennemore's sentencing hearing, the arrest at issue in his criminal case was Mr. Kennemore's third for stealing guns, and stolen guns typically end up on the street where they harm members of the public. (Crim. Doc. 81, pp. 7-8). Therefore, the Court could not depart downward under § 5K2.13. And Mr. Kennemore cannot demonstrate prejudice because the Court varied downward based on Mr. Kennemore's narcolepsy, cataplexy, and mental health history. On this record, there is no reasonable likelihood that the outcome of Mr. Kennemore's sentencing would have been different had Mr. Kendrick requested a §

5K2.13 departure. Therefore, Mr. Kendrick's representation does not constitute ineffective assistance of counsel.

## III.

With respect to "substantial assistance," Mr. Kennemore argues that he "recently provided the United States Attorney[']s office with information [on] a drug (heroin) and firearm conspiracy in Huntsville[,] Alabama." (Doc. 1, p. 7). Mr. Kennemore seems to assert that the government should have filed a substantial assistance motion under Fed. R. Crim. P. 35(b) and asked the Court to reduce his sentence.

"The government has the power, but not a duty, to file a substantial assistance motion." *Lanier v. United States*, 769 Fed. Appx. 847, 851 (11th Cir. 2019) (citing *United States v. Dorsey*, 554 F.3d 958, 960 (11th Cir. 2009)). The prosecutorial discretion to refuse to file a substantial assistance motion is subject to judicial review only if it is based on an unconstitutional motive, such as a defendant's race or religion, or is not rationally related to any legitimate government end. *Wade v. United States*, 504 U.S. 181, 185–86 (1992) (discussing motions under U.S.S.G. § 5K1.1); *see United States v. McNeese*, 547 F.3d 1307, 1309 (11th Cir. 2008) (extending *Wade* to Rule 35(b) motions). Mr. Kennemore has not alleged that the government has an unconstitutional motive for not filing a Rule 35 motion for substantial assistance or that the government's reasons for failing to file a motion

are not legitimate.[9]  Therefore, Mr. Kennemore is not entitled to a sentence reduction under Rule 35.[10]

## IV.

For the reasons stated, by separate order, the Court will deny Mr. Kennemore's § 2255 motion to vacate.  Because Mr. Kennemore has not "made a substantial showing of the denial of a constitutional right" and because his § 2255 motion does not contain issues that are debatable among jurists of reason, this Court will not issue a certificate of appealability.  *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Pursuant to Rule 22(b)(1) of the Federal Rules of Appellate Procedure, Mr. Kennemore may request a certificate of appealability

---

[9]  According to the United States, Mr. Kennemore "sent an unsolicited letter to the ATF office in Birmingham, who then forwarded [the letter] to Huntsville."  (Doc. 8, p. 9).  The information in the letter was "deemed not to be of any use to law enforcement."  (Doc. 8, p. 9).  The United States did not submit this information via affidavit.

[10]  Neither *Wade* nor *McNeese* involved a motion to vacate under § 2255.  Both cases concern challenges in criminal proceedings regarding substantial assistance.  *See Wade*, 504 U.S. at 183-84; *McNeese*, 547 F.3d at 1308.  In a criminal proceeding, a defendant may file a motion to compel the government to file a Rule 35 motion.  *United States v. Rodriguez*, 846 Fed. Appx. 868, 870 (11th Cir. 2021); *United States v. Merritt*, 674 Fed. Appx. 968, 968-69 (11th Cir. 2017); *United v. Nance*, 426 Fed. Appx. 801, 802 (11th Cir. 2011).  The district court lacks jurisdiction to compel the government to file a Rule 35(b) motion if a defendant "failed to make a substantial showing that the government either breached the terms of the plea agreement or acted with an unconstitutional motive."  *Nance*, 426 Fed. Appx. at 803 (citing *Wade*, 504, U.S. at 185-87).  Mr. Kennemore's plea agreement does not contain a substantial assistance provision concerning cooperation, (Crim. Doc. 38), the Court did not discuss with Mr. Kennemore the possibility of a downward departure for substantial assistance at his change of plea hearing, (Crim. Doc. 83), and Mr. Kennemore has not alleged facts to support an unconstitutional motive, (Doc. 1).  If he had such an argument, Mr. Kennemore would have to present it by motion in his criminal proceeding.

from the Eleventh Circuit Court of Appeals.  Fed. R. App. P. 22(b); 11th Cir. R. 22-1.

       **DONE** and **ORDERED** this February 25, 2025.

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE